UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ALEX KALPAXIS, | |
| *Plaintiff*, | |
| – against – | |
| MEDRHYTHMS, INC., BRIAN HARRIS, OWEN MCCARTHY, | |
| *Defendants*. | |

**MEMORANDUM & ORDER**
24-cv-02943 (NCM) (CHK)

**NATASHA C. MERLE**, United States District Judge:

Before the Court is defendants MedRhythms, Inc. ("Company"), Brian Harris, and Owen McCarthy's motion to dismiss plaintiff's second amended complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Plaintiff Alex Kalpaxis brings this action pursuant to the Court's diversity jurisdiction, asserting state law claims for promissory estoppel against all defendants, and claims for breach of contract, quantum meruit, and unjust enrichment against the Company. SAC ¶¶ 127–63, ECF No. 29. For the reasons stated below, defendants' motion is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

In 2016, Kalpaxis and defendants Harris and McCarthy founded MedRhythms, a startup company specializing in inventing and marketing medical devices to treat patients

---

[1]     The Court hereinafter refers to Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's Second Amended Complaint, ECF No. 36-1, as the "Motion"; Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss, ECF No. 36-2, as the "Opposition"; and Defendants' Reply Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's Second Amended Complaint, ECF No. 36-3, as the "Reply."

with neurological defects. SAC ¶ 12. Kalpaxis was the Company's Chief Technology Officer ("CTO"), Harris was and remains the Company's Chief Executive Officer ("CEO"), and McCarthy was and remains the Company's President and Founder. SAC ¶¶ 14–16. As CTO, Kalpaxis created, developed, and invented medical devices that provided the foundation for the Company's business model. SAC ¶ 17. Defendants promised Kalpaxis that he would be compensated for all of his work once the Company raised sufficient capital to fund its operations. SAC ¶ 24. Kalpaxis worked for the Company full time from 2016 through January 2021 and part time from late 2021 through April 2024. SAC ¶¶ 29, 104. During this time, Kalpaxis paid for his own living expenses and for business expenses that he incurred on behalf of the Company. SAC ¶ 54. Despite repeated assurances that he would receive an annual salary, deferred compensation in the form of stock options, and reimbursement for business expenses, Kalpaxis was never paid a salary, SAC ¶¶ 30, 44, 46, 53, 63, 66, 70 and his business expenses exceeded the amount he was reimbursed, SAC ¶¶ 76–81.

Kalpaxis was, however, granted a stock option (the "Option") to purchase 56,500 shares of common stock at a price of $0.40/share. SAC ¶ 57; Incentive Stock Option Agreement ("ISO") 2,[2] ECF No. 29-1.[3] The ISO provided that the Option would expire either (i) 30 days after Kalpaxis' employment with the Company terminated; or (ii) one

---

[2]    The Court may take judicial notice of documents attached to a complaint. *See Commonwealth Land Title Ins. v. Am. Signature Servs.*, No. 13-cv-03266, 2014 WL 672926, at *7 n.7 (E.D.N.Y. Feb. 20, 2014) (citing *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F. 3d 150, 157 (2d Cir. 2006) ("[C]ourts may take judicial notice of documents attached to, integral to, or referred to in the complaint.")).

[3]    Throughout this Opinion, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

year after he suffered a "permanent and total disability" or death. *See* ISO 3. In order to exercise the Option, Kalpaxis was required to deliver written notice to the Company together with payment for "the number of shares with respect to which the Option [wa]s to be exercised." ISO 2. Although Kalpaxis attempted to exercise the Option "throughout his tenure as CTO," SAC ¶ 106, the Company "refused . . . to allow [him] to exercise his Option," SAC ¶ 108.

In or around January 2021, Kalpaxis suffered a stroke which required two and a half years of recovery. SAC ¶ 92. Nonetheless, in "late 2021" he returned to work at the Company on a part-time basis. SAC ¶¶ 29, 104. A few years later, in the beginning of 2024, Kalpaxis demanded to exercise the Option in compliance with the terms and provisions of the ISO, including its notice requirements. SAC ¶¶ 100–101.[4] The Company, however, refused his attempt. SAC ¶ 108. In February 2024, Kalpaxis again demanded to exercise the Option in compliance with the terms and provisions of the ISO. SAC ¶¶ 129–30. The Company again refused to allow him to exercise the Option. SAC ¶¶ 132–33.

Two months later, Kalpaxis sued defendants in the instant action on the basis of this Court's diversity jursidction. *See* Compl., ECF No. 1. Following defendants' request for a pre-motion conference in advance of an anticipated motion to dismiss, Kalpaxis requested, and was granted, leave to amend. *See* ECF Order dated July 19, 2024. On August 2, 2024, Kalpaxis filed the amended complaint ("AC"), bringing claims for promissory estoppel and unjust enrichment against defendants, and claims for breach of

---

4       Paragraph 100 of the SAC alleges that this demand took place in January 2023 "after receiving the company's Q4 financials," but paragraphs 95–97 and 108 all refer to Plaintiff receiving those Q4 financials at the close of Q4 of 2023 (i.e., December 2023). It is reasonable to infer that the demand referred to in paragraph 100 took place in January 2024, not January 2023.

contract, quantum meruit, and accounting against the Company. AC ¶¶ 75–109, ECF No. 17. Defendants moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in full for failure to state a claim. *See* Defs' Mot. to Dismiss Pl's Amended Complaint, ECF No. 23. On March 13, 2025, the Court held a hearing on defendants' motion to dismiss. Minute Entry dated March 13, 2025. At that hearing, the parties informed the Court that they had briefed a portion of the motion to dismiss using the wrong state's law. Tr. of Oral Arg. ("Tr.") 6:23–7:13, 7:22-25, ECF No. 32. According to the parties, the ISO incorporates by reference the Company's 2016 Stock Incentive Plan, which contains a Massachusetts choice of law provision. Tr. 5:16–6:05; *see* ISO 2 ("This Option is and shall be subject in every respect to the provisions of the Company's 2016 Stock Incentive Plan . . . which is incorporated herein by reference . . . ."). After discussing the choice of law issue with the parties, the Court explained several percieved deficiencies in the AC and once again gave Kalpaxis the opportunity to amend to cure those deficiencies. Tr. 30:21–22. Kalpaxis filed the SAC on April 16, 2025. *See* SAC.

## LEGAL STANDARD

When deciding a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014).[5] Factual disputes are typically not the subject of the Court's analysis, as Rule 12 motions "probe the legal, not the factual, sufficiency of a complaint." *Plastic Surgery Grp., P.C. v.*

---

[5]    Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

*United Healthcare Ins. Co. of N.Y.*, 64 F. Supp. 3d 459, 468–69 (E.D.N.Y. 2014). That is, "the issue" on a motion to dismiss "is not whether a plaintiff will ultimately prevail" but instead whether a plaintiff is "entitled to offer evidence to support the[ir] claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012). Accordingly, dismissal is only appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000).

At the same time, plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conclusory allegations and legal conclusions masquerading as factual conclusions do not suffice to prevent a motion to dismiss. *Nwaokocha v. Sadowski*, 369 F. Supp. 2d 362, 366 (E.D.N.Y. 2005) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)).

In a diversity case, federal courts apply the substantive law of the forum state. *Burt Rigid Box, Inc. v. Traveler's Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002). And "[w]here a contract contains a choice-of-law provision, New York courts will generally honor that provision." *Prime Contractors Inc. v. APS Contractors Inc.*, 786 F. Supp. 3d 524, 544 (E.D.N.Y. 2025).[6]

---

[6]    Defendants' position at the March 16, 2025 hearing was that the newly discovered "choice of law issues d[id] not alter the outcome of the motion" because "Massachusetts and New York law are essentially identical when it comes to the elements of a breach of contract." Tr. 6:09–12. Plaintiff, however, contended that "practically every single term and condition in [the stock incentive] plan applie[d] to [his] claims." Tr. 17:22–18:01. Defendants briefed the breach of contract claim using Massachusetts law. Mot. 10–17. The SAC and Opposition are silent as to choice of law, but the Opposition cites only New York law. *See generally* Opp'n. Nonetheless, because the parties agreed that the Stock Incentive Plan was incorporated into the ISO by reference and that it contains a Massachusetts choice of law provision, Tr. 18:02–13, and because that was in part the basis for the parties' second round of briefing, the Court analyzes plaintiff's breach of

## DISCUSSION

### I.   Breach of Contract

To state a claim for breach of contract under Massachusetts law, a plaintiff must allege: "(1) that a valid, binding contract existed, (2) the defendant breached the terms of the contract, and (3) the plaintiff sustained damages as a result of the breach." *Li v. Teikametrics, Inc.*, No. 21-cv-10275, 2023 WL 2919835, at *4 (D. Mass. Mar. 8, 2023) (citing *Young v. Wells Fargo Bank*, N.A., 717 F.3d 224, 232 (1st Cir. 2013)). A plaintiff "must describe, with substantial certainty, the specific contractual promise the defendant failed to keep," *Thakkar v. United States*, 389 F. Supp. 3d 160, 177 (D. Mass. 2019), and must do more than simply allege that "the defendant breached the contract," *Hogan v. Teamsters Loc. 170*, 495 F. Supp. 3d 52, 58 (D. Mass. 2020); *Brooks v. AIG SunAmerica Life Assurance Co.*, 480 F.3d 579, 586 (1st Cir. 2007). Therefore, a complaint is sufficient when it pleads "at least" enough facts to identify "who did what to whom, when, where, and why," *Madden v. Ascensus Coll. Sav. Recordkeeping Servs., LLC*, No. 20-cv-10565, 2021 WL 231298, at *4 (D. Mass. Jan. 22, 2021), and explains "what obligations were imposed on each of the parties by the alleged contract." *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 38 (1st Cir. 2007).

Plaintiff raises three theories in support of his breach of contract claim: (1) the Company breached the ISO; (2) the Company breached their repeated promises to pay plaintiff deferred compensation in the form of an annual salary; and (3) the Company

---

contract claims under Massachusetts law. *See Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 566 (2d Cir. 2011) ("Moreover, where the parties agree that [a given state's] law controls, this is sufficient to establish choice of law."); *see also Artuso v. Vertex Pharms., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011) ("In determining which state's law applies, a diversity court is free to honor the parties' reasonable agreement.").

breached an agreement to reimburse plaintiff's expenses. *See* Opp'n 9–11, ECF No. 36-2. The Court addresses each in turn.

> A.    <u>The ISO</u>

Plaintiff alleges that the Company breached the ISO "by refusing to issue 56,500 shares of common stock upon [p]laintiff's exercise of his Option." SAC ¶ 113. Plaintiff asserts that he attempted to exercise his Option "in January 202[4]," SAC ¶ 100, and again "in or about February 2024," SAC ¶ 129, and more generally "throughout his tenure as CTO of the company," SAC ¶ 106.

The Company responds that this alleged breach is foreclosed by the ISO's own terms. Mot. 10. Specifically, the Company points to a provision of the ISO which states that the Option terminates either: (i) 30 days after the holder stops working for the Company; or (ii) one year after the permanent and total disability or death of the holder, whichever is earlier. Mot. 10; *see also* ISO 3. In defendants' view, plaintiff was no longer working for the Company after his stroke in 2021. *See* Mot. 10–11. Therefore, the Option had already terminated when plaintiff allegedly attempted to exercise it in 2024. Mot. 10–12.

Defendants characterize plaintiff's allegations that he continued to work for the Company after his stroke as "irreconcilable with his prior pleadings." Mot. 11. Defendants assert that, even accepting the new allegations in the SAC as true, the gap between January 2021—when plaintiff had a stroke—and "late 2021"—when plaintiff returned to work, means that the Option terminated "sometime in February or March 2021" because

plaintiff "stopped working for the Company for thirty days." Mot. 11.[7] Accordingly, under either provision in the ISO, the Company contends that the Option was terminated by the time plaintiff allegedly exercised it in 2024. Mot. 12.

ISO provisions aside, defendants attack the SAC as too lacking in factual detail to establish plaintiff "complied with the exercise requirements set forth in the Option." Mot. 13–14. Finally, defendants fault the SAC on the basis that it "never identifies a specific provision within the Option" that the Company breached. Mot. 14.

Plaintiff plausibly pleads that the Company breached the ISO when he attempted to exercise the Option in January and February 2024. First, accepting the allegations in the SAC as true, the Option had not expired at the time of plaintiff's alleged exercise in 2024. The plain language of the ISO provides that the Option terminates either: (i) "30 days after the date of voluntary termination of employment by [plaintiff];" or (ii) "one year after the permanent and total disability . . . or death of [plaintiff]," whichever occurs first. ISO 3. Plaintiff alleges that he "worked for [the Company] full-time from 2016 through January 2021 . . . and thereafter worked for the [C]ompany part-time through the date of the commencement of the instant action." SAC ¶ 29; *see also* SAC ¶ 109. While the Court notes some inconsistency in the SAC regarding the dates of plaintiff's employment, *compare* SAC ¶¶ 98, 101 *with* SAC ¶¶ 29, 109, viewing the allegations in the

---

[7]     The prevailing view in the Second Circuit is that a court will not disregard allegations in an amended pleading absent exceptional circumstances. *See Palm Beach Strategic Income, LP v. Salzman*, No. 10-cv-00261, 2011 WL 1655575, at *6 (E.D.N.Y. May 2, 2011) ("[I]n a typical case, a prior inconsistent pleading should not trump the Court's obligation under Rule 12(b)(6) to accept a complaint's allegations as true."), *aff'd* 457 F. App'x 40 (2d Cir. 2012). Moreover, even though the SAC alleges facts that the amended complaint was previously silent on, the new allegations do not "directly contradict[]" plaintiff's prior allegations, Mot. 12, at least not to the extent that defendants suggest.

light most favorable to plaintiff, his employment terminated on April 19, 2024. SAC ¶ 29 ("Plaintiff worked for [the Company] full-time from 2016 through January 2021 . . . and thereafter worked for the company part-time through the date of the commencement of the instant action."); *see* Compl. (filed April 19, 2024). Therefore, under the plain terms of the ISO, the Option had not expired at the time he attempted to exercise in January and February 2024.

The Company's argument that the Option expired while plaintiff was recovering from his 2021 stroke is not persuasive. The Company asserts that the "only comprehensible reading of the allegations of [plaintiff's] earlier pleadings and the [SAC] is that he stopped working for the Company for most of 2021" and therefore plaintiff's options expired "sometime in February or March 2021." Mot. 11. But the ISO is silent as to what happens when an employee "stop[s] working." As relevant here, the ISO provides that the Option terminates "30 days after the date of voluntary termination" or "one year after the permanent and total disability . . . or death of [plaintiff]." ISO 3. It says nothing about the scenario presented here: an employee who has not been fired and who has not formally resigned suffers extended but temporary illness. Therefore, plaintiff's claim is not "directly contradicted by the Option's plain language." Mot. 12.[8]

Second, plaintiff has sufficiently alleged that his January and February 2024 demands complied with the exercise requirements of the ISO. *See* SAC ¶¶ 100–01 ("In January 202[4], [p]laintiff . . . demanded to exercise his option for 56,500 common shares of stock . . . . Plaintiff's demand was . . . in compliance with the terms and provisions of

---

[8]    Further, the precise structure of plaintiff's employment relationship with the Company during this time is a factual question inappropriate for resolution on a motion to dismiss. Indeed, it is plausible to infer that plaintiff remained employed while he recovered from the stroke.

the ISO agreement, including its notice requirements."); SAC ¶¶ 129–30 (same regarding plaintiff's February 2024 demand).

Plaintiff's allegations regarding his alleged exercise are sparse, to be sure. However, so too were the requirements to exercise the Option. ISO 2. To properly exercise, the ISO requires only "the delivery of written notice to the Company setting forth the number of shares . . . to be exercised, together with payment . . . [and] an investment letter in form and substance satisfactory to the Company and its counsel." ISO 2. Plaintiff has alleged that he "compli[ed] with the terms and provisions of the ISO agreement, including its notice requirements," SAC ¶ 101; *see also* SAC ¶ 130, and that "[the Company] refused [his] exercise," SAC ¶ 44. In other words, plaintiff plausibly alleges the action that he took (exercise pursuant to the ISO), SAC ¶¶ 100–01, 129–30; who was involved (the Company), SAC ¶ 44; the relevant timeframe (January and February of 2024), SAC ¶¶ 100, 129; why he took the action (the Option was valued at over $1,023,215) ¶ 96; and how the Company responded (refused to approve the exercise) SAC ¶¶ 108, 132–133. Accordingly, plaintiff pleads "at least" enough facts to identify "who did what to whom, when, where, and why," *Madden*, 2021 WL 231298, at *4. Contrary to defendants' contentions, Mot. 13, plaintiff is not required to provide more specific details as to how he attempted to exercise the Option at this stage. *Li*, 2021 WL 7368819, at *1 (explaining that the question of "whether all conditions precedent were satisfied" was "not ripe" because a plaintiff "need not prove" her claim to survive a motion to dismiss); *see also*

10

Fed. R. Civ. P. 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed.").[9]

In sum, the SAC states a claim for breach of contract based on plaintiff's attempts to exercise the Option in 2024. Plaintiff alleges that the ISO was active at the time he attempted to exercise the Option, that he complied with the exercise requirements of the ISO when he attempted to exercise the Option, and that the Company refused his valid attempt. At the motion to dismiss stage, a "minimally sufficient complaint" need only "explain what obligations were imposed on each of the parties by the alleged contract" *Buck*, 476 F.3d at 38. Plaintiff has done so here.

### B.    Annual Salary & Expense Reimbursement

Plaintiff's other theories of breach, however, fall flat. Plaintiff claims that, separate from the ISO, the Company "agreed that [plaintiff] would be paid an annual salary," SAC ¶ 25, and that the Company breached this supposed agreement because plaintiff was "never paid a cent for any of his work." SAC ¶ 46; *see also* SAC ¶¶ 44, 63, 66, 69; Opp'n 6. Additionally, plaintiff alleges that he was "reassured and repeatedly promised by [d]efendants that . . . he would be paid . . . [for] expenses incurred on behalf of the company." SAC ¶ 60.

For their part, defendants argue that the SAC fails to adequately plead the existence of any agreement other than the Option. Mot. 16; Reply 8–9. They note the lack of facts

---

[9]    To be sure, the requirement to generally allege conditions precedent is a real one. For example, plaintiff also argues that he attempted to exercise the Option "throughout his tenure as CTO of the company." SAC ¶ 106. While the Court assumes this to be true for purposes of a motion to dismiss, plaintiff fails to even generally allege that he complied with the ISO's notice and other requirements when he attempted to exercise the Option prior to 2024. Standing alone, plaintiff's allegations regarding his pre-2024 attempts to exercise his options would not be sufficient to state a claim.

regarding "the amount of the annual salary, what constitutes a reimbursable business expense, the duration of the agreement, or any other essential terms" of the alleged oral agreement. Mot. 16–17. According to defendants, these omissions doom plaintiff's claim. Mot. 17.

Under Massachusetts law, "[o]ral . . . contracts must be definite, that is, of reasonable certainty" in order to be enforceable. *Barnia v. Kaur*, 646 F. Supp. 3d 154, 166 (D. Mass. 2022). To plead the existence of a contract, a plaintiff must provide facts that show "agreement between the parties on the material terms of th[e] contract." *Perrone v. City of Easthampton*, 791 F. Supp. 3d 186, 195 (D. Mass. 2025). "[I]t is well established that expectations [alone] fall far short of a binding agreement." *Cabi v. Bos. Child.'s Hosp.*, 161 F. Supp. 3d 136, 162 (D. Mass. 2016).

First, plaintiff does not plausibly plead the existence of a separate contract to pay him an annual salary. Plaintiff's allegations, in sum, are that (1) defendants repeatedly promised to pay him "an annual salary commensurate with his experience [and] expertise," SAC ¶ 140; *see also* SAC ¶ 53, and (2) "[t]he position of Chief Technology Officer in Maine . . . earns on average an annual salary of more than $300,000," SAC ¶ 29; *see also* Opp'n 10–11. Plaintiff fails to allege what the material terms of this supposed contract were beyond some vague promise to be compensated. That is the functional equivalent of alleging "the [Company] breached the contract," *Hogan*, 495 F. Supp. 3d at 58, and is insufficient to state a claim.

Fatally, plaintiff does not allege how much defendants agreed to pay him in exchange for his "technical expertise and experience in developing medical devices and the technology that formed the basis of [their] business." SAC ¶ 55. For employment contracts, material terms include "the salary or compensation." *Perrone*, 791 F. Supp. 3d

at 195; *see also Sands v. Ridefilm Corp.*, 212 F.3d 657, 661 (1st Cir. 2000) ("The amount of compensation is an essential term of an employment contract."). Plaintiff fails to allege the amount, or even a salary range, that defendants promised to pay him.

The SAC's reference to the alleged market rate for a CTO in Maine does nothing to revive plaintiff's claim. Although plaintiff alleges that the "position of [CTO] in Maine . . . earns on average an annual salary of more than $300,000," SAC ¶ 29, he does not connect that figure to any promise that defendants made. Plaintiff does not, for example, allege that defendants promised to pay him a market rate salary for his work. On the contrary, plaintiff's allegations merely suggest that he expected to be paid a market rate salary. "[E]xpectations," however, "do not suffice to establish the existence of an enforceable contract." *Perrone*, 791 F. Supp. 3d at 195. Absent additional facts as to how this contract formed or what its material terms were, plaintiff's threadbare allegations that he was promised to be paid "fail[] . . .to demonstrate that a contract exists between the parties." *Haglund v. Estee Lauder Cos.*, 466 F. Supp. 3d 292, 298–99 (D. Mass. 2020).

Plaintiff's claim for breach of an alleged separate agreement to reimburse expenses must be dismissed for similar reasons. *See* Opp'n 11. Plaintiff's allegation that he was "reassured and repeatedly promised by [d]efendants that . . . he would be paid . . . [for] expenses incurred on behalf of the company," SAC ¶ 60, is devoid of any supporting facts that would make the alleged agreement one "of reasonable certainty." *Barnia*, 646 F. Supp. 3d at 166. Crucially, plaintiff never describes, in any level of detail, what constituted a business expense under the alleged agreement. Plaintiff's claim fails on this basis alone because "[a]n alleged oral contract is unenforceable if it is silent on essential terms." *Laudano v. 214 S. St. Corp.*, 608 F. Supp. 2d 185, 194 (D. Mass. 2009). For example, plaintiff alleges that he paid out of his own pocket to "develop the company's technology,"

13

SAC ¶ 76, and that he paid for "travel to . . . Maine, food, lodging, etc.," SAC ¶ 78. But without knowing what the parties agreed would constitute a business expense and what would not, the Court "cannot enforce [the] contract." *Barnia*, 646 F. Supp. 3d at 166.

Moreover, plaintiff's allegations on this point are not plausible because they are contradictory. While plaintiff asserts that he was "never reimbursed" for any of the costs he incurred on behalf of the Company, *see, e.g.*, SAC ¶ 80, he elsewhere admits that he "received minimal reimbursement for business expenses incurred on behalf of the [C]ompany." *Compare* SAC ¶¶ 76, 80, *with* SAC ¶¶ 77, 79. Again, without any indication as to which expenses were reimbursed and which ones were not, it is impossible to discern whether defendants were in fact in breach. Because plaintiff fails to articulate what expenses defendants allegedly promised to reimburse or allege which expenses they did or did not reimburse, he has not "alleged with substantial certainty facts showing the existence of a binding contract that . . . [defendants] allegedly breached." *Vieira v. First Am. Title Ins.*, 668 F. Supp. 2d 282, 290 (D. Mass. 2009).

\*     \*     \*

Because plaintiff plausibly pleads that the Company breached the ISO when it refused to allow plaintiff to exercise the Option, Opp'n 9–10, defendants' motion to dismiss plaintiff's breach of contract claim is denied.

## II.   Choice of Law

Defendants tentatively argue that Maine law applies to plaintiff's quasi-contract claims, but cite both New York and Maine law in their Motion. Mot. 17 & n.5. Plaintiff does not address defendants' choice of law argument in his Opposition, but relies solely on New York law.

14

"A federal court sitting in diversity applies the choice-of-law rules of the forum state." *Correa v. New England Life Ins.*, 751 F. Supp. 3d 218, 230 (E.D.N.Y. 2024). In New York, "the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws." *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001). An "actual conflict" exists where "the applicable law from each jurisdiction provides different substantive rules and those differences are relevant to the issue at hand and have a significant possible effect on the outcome of the trial." *Winter v. Am. Inst. of Med. Scis. & Educ.*, 242 F. Supp. 3d 206, 218 (S.D.N.Y. 2017) (emphasis omitted) (quoting *Fin. One Pub. Co. v. Lehman Bros. Special Fin.,* 414 F.3d 325, 331–32 (2d Cir. 2005)). In the absence of any actual conflict of laws between the relevant jurisdictions, "a choice-of-law analysis is unnecessary and New York law will apply." *Echo Bay Pharms., LLC v. Torrent Pharma, Inc.*, No. 20-cv-06345, 2022 WL 2132964, at *6 n.9 (S.D.N.Y. June 14, 2022).

Here, the place of contracting is Massachusetts, the domiciles of the parties are Massachusetts (defendants) and New York (plaintiff), and the location of the subject matter is Maine, where the Company was incorporated and operates. Mot. 18 n.5. Because there is no "actual conflict" between the way these states interpret promissory estoppel, quantum meruit, or unjust enrichment, the Court applies New York law.[10]

---

[10] *See iNebular, Inc. v. Deutsche Bank Tr. Co. Ams.*, 651 F. Supp. 3d 413, 422 (D. Mass. 2023) ("In order to state a claim for promissory estoppel, a plaintiff must plead three essential elements: (1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission."); *Cooper v. Cooper*, No. 19-cv-03025, 2022 WL 2716333, at *6 (E.D.N.Y. July 12, 2022) ("New York law requires a claim for promissory estoppel to state three elements: (1) [a] clear and unambiguous promise; (2) reasonable and foreseeable reliance on that promise; and (3) injury . . . as a result of the reliance."); *Warren v. Zapata*

### III.    Promissory Estoppel

To state a claim for promissory estoppel under New York law, plaintiff must plead "(1) [a] clear and unambiguous promise; (2) reasonable and foreseeable reliance on that promise; and (3) injury . . . as a result of the reliance." *Cooper*, 2022 WL 2716333, at *6. Promissory estoppel is only available when there is no "valid and enforceable written contract governing a particular subject matter." *Spherenomics Glob. Contract Ctrs. v. vCusotmer Corp.*, 427 F. Supp. 2d 236, 253 (E.D.N.Y. Mar. 31, 2006). A plaintiff may plead both a breach of contract claim and, in the alternative, a promissory estoppel claim if the defendant "does not concede the enforceability" of the governing contract. *Personal*

---

*Computing, Inc.*, No. 23-cv-13197, 2025 WL 1556040, at *8 (D. Mass. June 2, 2025) ("Under Massachusetts law, claims for quantum meruit and unjust enrichment are treated similarly and have the same elements. . . . [A plaintiff] must show (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances that would be inequitable without payment for its value."); *Rojo v. Deutsche Bank*, No. 06-cv-13574, 2010 WL 2560077, at *6 (S.D.N.Y. June 23, 2010) ("Unjust enrichment and quantum meruit are quasi-contract claims, and may be analyzed together under New York law. . . . [A] plaintiff must show that (1) the defendants were enriched; (2) that the enrichment was at plaintiff's expense, and (3) that the circumstances are such that equity and good conscience require the defendants to make restitution."), *aff'd*, 487 F. App'x 586 (2d Cir. 2012); *Jay Cashman, Inc. v. Portland Pipe Line Corp.*, 559 F. Supp. 2d 85, 105 (D. Me. 2008) ("A valid claim in quantum meruit requires: that (1) services were rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect payment. . . . To establish a claim for unjust enrichment, three elements must be proved: [1] a benefit conferred upon the defendant by the plaintiff; [2] an appreciation or knowledge by the defendant of the benefit; and [3] the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value."), *report and recommendation adopted sub nom. Jay Cashman, Inc. v. Portland Pipe Line, Inc.*, 573 F. Supp. 2d 335 (D. Me. 2008). Although Maine courts analyze quantum meruit and unjust enrichment claims as "distinct causes of action," *id.* at 104, that difference does not create an "actual conflict" because it is not "relevant to the issue at hand," *Winter*, 242 F. Supp. 3d at 218, given the SAC's pleading deficiencies discussed below, *see infra* Sections III–IV.

*Watercraft Prod. SARL v. Robinson*, No. 16-cv-09771, 2017 WL 4329790, at \*11 (S.D.N.Y. Sept. 1, 2017) (collecting cases). However, where a defendant does not dispute that the agreement governing the subject matter is a valid and enforceable contract, the promissory estoppel claim must be dismissed. *See Mancuso v. L'Oreal USA, Inc.*, No. 21-cv-00989, 2021 WL 1240328, at \*4 (S.D.N.Y. Apr. 2, 2021) (dismissing the plaintiff's promissory estoppel claim as "duplicative of her breach of contract claim" where the defendants acknowledged that an agreement "constitute[d] a valid and enforceable contract").

Plaintiff's promissory estoppel claim is based largely on the same promises that formed the basis of his breach of contract claim. *See* SAC ¶¶ 138–150. For the reasons that follow, plaintiff fails to plausibly plead a clear and unambiguous promise in support of his promissory estoppel claim based on alleged promises to pay him an annual salary or reimburse his expenses.[11]

As a threshold matter, "the existence of a valid and enforceable contract governing a particular subject matter precludes recovery under a promissory estoppel cause of

---

[11]     Plaintiff argues in his Opposition that he relied on defendants' promises "that they would be partners, coventurers and otherwise share income and profits of the company" and cites "Complaint ¶ 87" for that proposition. Opp'n 12. Paragraph 87 of the SAC, however, states: "As alleged herein, beginning in 2016, Kalpaxis was repeatedly promised an annual salary, deferred compensation and reimbursement of business expenses incurred on behalf of the company." SAC ¶ 87. Indeed, the allegation regarding partnership appears to have been removed from the SAC. *Compare* AC ¶ 87, *with* SAC. Because the SAC contains no allegations regarding any alleged "partnership between Plaintiff, Harris, and McCarthy," Opp'n 13, the Court need not consider that theory of promissory estoppel. In any case, the SAC alleges that the Company is a corporation, not a partnership. SAC ¶ 2. Even if the SAC were to contain the allegation that plaintiff removed, that singular allegation would be too conclusory to support a promissory estoppel claim. *See* AC ¶ 87 ("Defendants, in exchange for Plaintiff's in-kind contributions, payments and other contributions, made clear and unambiguous promises to Plaintiff that they would be partners, co-ventures and otherwise share income and profits of the company.").

action arising out of the same subject matter." *See That's What She Said, Inc. v. Gutter Games Ltd.*, No. 22-cv-04230, 2024 WL 3678473, at *10 (S.D.N.Y. Aug. 5, 2024). Plaintiff's basis for his promissory estoppel claim is, in part, that in exchange for his contributions to the Company, he would receive "deferred compensation in the form of the company's common stock paid as an option to purchase 56,500 shares of common stock." SAC ¶ 140. That is the precise subject matter governed by the ISO. Accordingly, to the extent plaintiff's promissory estoppel is premised on the subject matter of the ISO, there is no "legal duty independent of th[at] contract," and the claim must be dismissed. *That's What She Said,* 2024 WL 3678473, at *10.

Plaintiff's "non-duplicative" promissory estoppel claims—the alleged existence of separate agreements to pay him an annual salary and reimburse plaintiff's expenses—fare no better because they are insufficiently pled. Plaintiff contends that defendants made "clear and unambiguous promises" that he would be paid an annual salary and reimbursed for all expenses incurred on behalf of the Company, SAC ¶¶ 139, 142, but, as discussed above, *supra* Section I.B., plaintiff fails to allege the amount of the annual salary, what constitutes a reimbursable business expense, the duration of the agreement, or any other details of the alleged agreement. Mot. 16–17. Under New York law, "[a] promise that is too vague or too indefinite is not actionable under a theory of promissory estoppel." *Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 534 (E.D.N.Y. 2015). Absent additional factual support, the Court is unable to determine that it is plausible that defendants made any promise at all, much less a "clear and

18

unambiguous" promise that would induce "reasonable and foreseeable reliance" by plaintiff. *Cooper*, 2022 WL 2716333, at *6.[12]

Because the SAC consists only of general promises to pay plaintiff an unspecified annual salary and reimburse an undefined category of "expenses incurred on behalf of the company," plaintiff's promissory estoppel claim must be dismissed. *See Sharp v. Patterson*, No. 03-cv-08772, 2004 WL 2480426, at *11 (S.D.N.Y. Nov. 3, 2004) ("The alleged promise of some unspecified compensation is not sufficiently clear or unambiguous to state a claim for relief based on promissory estoppel.").[13]

### IV.    Quantum Meruit & Unjust Enrichment

Finally, plaintiff's quantum meruit and promissory estoppel claims must be dismissed. To the extent these claims are premised on the ISO, they are duplicative of plaintiff's breach of contract claim; to the extent they are premised on an alleged promise

---

[12]    With respect to the unreimbursed expenses, the Court previewed this exact problem to plaintiff at the March 13, 2025 hearing on defendants' motion to dismiss the amended complaint. Tr. 23:24–25 ("The Court: I think you need to make clear not only was he not reimbursed, but also what was promised."); Tr. 24:02–07 ("The Court: So it seems obvious that if there's parts or components that he's using, that seems [like] a pretty clear business expense . . . but like food, hotel, the complaint would need to include . . . his belief . . . in a promise . . . that [those expenses] w[ere] also covered."). Nonetheless, the SAC fails to allege facts that explain what constituted a reimbursable expense under the alleged agreement. For example, plaintiff alleges that he paid for his own "travel to Portland, Maine, food, [and] lodging," but concedes that the Company "paid for parts and material for designs and prototypes that [p]laintiff created, developed, and invented" via "monthly reimbursement payments. SAC ¶¶ 78–79. Thus, plaintiff fails to plead facts to allow for a reasonable inference that defendants' alleged promise to reimburse him for expenses "incurred on behalf of the company," SAC ¶ 112, amounted to a promise to reimburse him for every expense he incurred in his role as CTO, including travel expenses.

[13]    Because plaintiff's promissory estoppel claim fails, the only remaining claims are against the Company, and the Court need not address individual defendants' argument that they cannot be held individually liable. Defs.' Mot. 24–26.

to pay plaintiff an annual salary and reimburse him for expenses, they are insufficiently pled.

When applying New York law, courts "analyze quantum meruit and unjust enrichment together as a single quasi contract claim." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005); *see also Sieden Assocs., Inc. v. ANC Holdings, Inc.*, 768 F. Supp. 89, 96 (S.D.N.Y. 1991) (explaining that "unjust enrichment is a required element for a[] . . . quasi contract, and quantum meruit . . . is one measure of liability for the breach of such contract"), *rev'd on other grounds*, 959 F.2d 245 (2d Cir. 1992). A plaintiff must show that "(1) the defendants were enriched; (2) that the enrichment was at plaintiff's expense, and (3) that the circumstances are such that equity and good conscience require the defendants to make restitution." *Rojo*, 2010 WL 2560077, at *6. "New York law precludes recovery for claims of unjust enrichment and quantum meruit where there is a valid, enforceable contract governing the same subject matter." *Solus. Express Ltd. v. Ashley Furniture Indus., Inc.*, No. 20-cv-07843, 2023 WL 2393861, at *5 (S.D.N.Y. Mar. 7, 2023).

Plaintiff alleges that he "performed work and services for the [C]ompany," SAC ¶ 152, but that the Company "failed to remunerate [p]laintiff for his labor and business expenses incurred on behalf of, and in, the company," SAC ¶ 156. As discussed, deferred compensation in the form of an option to purchase 56,500 shares of common stock is the exact subject matter which plaintiff alleges was covered by the ISO. SAC ¶ 57 ("The sole deferred compensation received from [the Company] by [p]laintiff was in September 2016 pursuant to an option to purchase 56,500 common shares of stock in the company."). Therefore, to the extent plaintiff's unjust enrichment claim is premised on

the ISO, it is duplicative of his breach of contract claim and must be dismissed. *See Solus.*

*Express*, 2023 WL 2393861, at *5.

As for plaintiff's quantum meruit and unjust enrichment claims based on the Company's alleged refusal to pay him an annual salary or reimburse certain expenses, plaintiff fails to plausibly allege that the Company agreed to compensate him in any other way than the Option. As discussed above, *supra* Section I.B, plaintiff fails to articulate the material terms of those alleged agreements—for example, how much he was to be paid and what constituted a reimbursable expense. Moreover, plaintiff *did* receive compensation in the form of the Option, which is valued around $1 million. SAC ¶¶ 57, 96. Accordingly, plaintiff has failed to plausibly allege "circumstances . . . such that equity and good conscience require the [Company] to make restitution." *Rojo*, 2010 WL 2560077, at *6.[14]

**CONCLUSION**

For the reasons stated above, plaintiff has stated a claim for breach of contract against the Company based on the ISO. Accordingly, defendants' motion to dismiss is

---

[14] The cases plaintiff cites in support of his argument that "an unjust enrichment claim can remedy [a] failed contract claim" are unavailing. Opp'n 14–15. In *Nuss v. Sabad*, the court concluded that the plaintiff's unjust enrichment claim was not duplicative of her "conventional tort claims," and did not consider a breach of contract claim. No. 10-cv-00279, 2016 WL 4098606, at *11 (N.D.N.Y. July 28, 2016). And in *Silva v. Smucker Nat. Foods, Inc.,* the court recognized that "[a]n unjust enrichment claim that merely duplicates, or replaces, a conventional contract . . . claim is insufficient." No. 12-cv-06154, 2015 WL 5360022, at *12 (E.D.N.Y. Sept. 14, 2015). Moreover, while plaintiff claims that the SAC "alleges claims containing additional elements that are distinct from the elements of unjust enrichment," Opp'n 15, he fails to explain why or how these claims differ from his claim for breach of contract. *See Smith v. Apple, Inc.* 583 F. Supp. 3d 554, 569 (S.D.N.Y. 2022) (dismissing unjust enrichment claim where plaintiffs "d[id] not explain why their unjust enrichment claim [wa]s distinct from their other claims, or distinct from a conventional tort or contract action").

**GRANTED in part** as to plaintiff's promissory estoppel, quantum meruit, and unjust enrichment claims and **DENIED in part** as to plaintiff's breach of contract claim.

       **SO ORDERED.**

                              */s/ Natasha C. Merle*
                             NATASHA C. MERLE
                             United States District Judge

Dated:        May 13, 2026
              Brooklyn, New York